**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **15-00299-jw**

**CONSENT ORDER APPROVING LM/MM - NON-PORTAL**

The relief set forth on the following pages, for a total of 15 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/31/2016**



/s/ John E. Waites
US Bankruptcy Judge
District of South Carolina

Entered: 10/31/2016

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>Gloria Esther Mojica,<br><br>Debtor(s). | C/A No. 15-00299-jw<br><br>Chapter 13<br><br>**CONSENT ORDER APPROVING LOSS MITIGATION/MORTGAGE MODIFICATION<br>(<u>NON-PORTAL</u>)** |

This matter comes before the Court upon the request of Debtor, Gloria Mojica, and Creditor, CitiMortgage, Inc. ("Mortgage Creditor") for approval of the parties' agreement for loss mitigation/mortgage modification ("LM/MM"). Mortgage Creditor has an existing loan secured by the Debtor's real property. The parties have reached an agreement for LM/MM without using the Portal, which will have the following material benefits to the Debtor:

☒ Reduction of the Debtor(s)' mortgage payments from the current amount of $594.53 per month to approximately $434.91 per month.

☒ Interest rate reduced from 6.99% to 2.0% [☐ Fixed or ☒ Variable]

☒ Arrearage in the amount of $5,885.27 ☐ forgiven or ☒ postponed.

☒ Other – Describe below:
Loan maturity date is extended from 11/1/2031 to 3/1/2056
Borrower incentive if payments are made timely: Accrued monthly benefit of $83.33 applied on the first through fifth anniversaries of April 2016 ($999.96 per year). In addition, if payments are timely made through the sixth year, a one-time benefit of $5,000 principal reduction will be applied.

Regarding LM/MM, the parties represent and agree that:

1. There will be no extension of additional funds beyond what is already owed;
2. Payments to other lien holders under the plan will not be affected;
3. That the LM/MM has no detrimental effect on other creditors and is in the best interest of Debtor and the estate;
4. That payments to Mortgage Creditor for arrearage <u>are</u> being made by the Trustee, and <u>will not</u> be made upon the effective date of the LM/MM agreement; any overage paid will be refunded to the Trustee within 60 days;
5. The Debtor has amended the plan, if necessary, to provide for mortgage payments to be made directly to Mortgage Creditor.
6. Relief from the automatic stay shall be granted for the benefit of Mortgage Creditor upon submission of a proposed order by Mortgage Creditor via counsel which specifies that the

    automatic stay is not lifted as to other lienholders.[1]  Unless otherwise ordered, the automatic stay shall remain effective as to all other lienholders; and

7. The documents finalizing the LM/MM shall be executed by the parties within 60 days from the entry of this Order.

Now, therefore, with the consents of Debtor, Mortgage Creditor, and the Trustee, as indicated by the signatures below,

IT IS HEREBY ORDERED that LM/MM is hereby approved.

**AND IT IS SO ORDERED.**

**WE CONSENT:**

| | |
|---|---|
| CitiMortgage – see attached signed Home Affordable Modification Agreement | /s/ *Wendi M. Freeman* <br> Attorney for Debtor <br> District Court I.D. 5336 |

*/s/ James M. Wyman*
James M. Wyman
Chapter 13 Trustee

---

[1] The order granting relief from stay should be titled "Order Granting Relief from Automatic Stay as to [Mortgage Creditor] Only."

**APN:** ████020

**Loan #:** ████1130

After Recording Return To:
CitiMortgage, Inc.
1000 Technology Drive, MS 420R
O'Fallon, MO   63368-2240
Doc Prep/Booking & Closing

This document was prepared by: Bobby Murzello
On behalf of:
CitiMortgage, Inc.
1000 Technology Drive, MS 420R
O'Fallon, MO   63368-2240

―――――――――――――――――[Space Above This Line For Recording Data]―――――――――――――――――

**Original Principal Amount:** $ 54,000.00
**Unpaid Principal Amount:** $ 45,014.70
**New Principal Amount:** $ 50,899.97
**New Money (Cap):** $ 0.00

### HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): GLORIA MOJICA, AN UNMARRIED WOMAN
Lender or Servicer ("Lender"): CitiMortgage, Inc. successor by merger to CitiFinancial Mortgage Company, Inc.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 10/04/01 and recorded on 12/17/01 in BOOK OR LIBER 2924, PAGE(S) 057-075, DOCUMENT # na on the public Records of DORCHESTER COUNTY, South Carolina
Property Address ("Property"): 231 GRAPEVINE ROAD, SUMMERVILLE, SC 29483

Legal Description: See attached legal description

If (i) my representations and covenants in Section 1 continue to be true in all material respects, (ii) all preconditions to the modification set forth in Section 2 have been met, and (iii) I meet all Home Affordable program eligibility requirements, then this Home Affordable Modification Agreement ("Modification Agreement") will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Modification Agreement and not defined have the meaning given to them in the Loan Documents.   If more than one Borrower or Mortgagor is executing this document, each is referred to as "I."   For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

I understand that after I sign and return two copies of this Modification Agreement to the Lender, the Lender will send me a signed copy of this Modification Agreement. This Modification Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
    B. One of the borrowers signing this Modification Agreement lives in the Property as a principal residence, and the Property has not been condemned;
    C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death or marriage;
    D. I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));
    E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Modification Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
    F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
    G. ~~I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.~~

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A. If prior to the Modification Effective Date (as defined in Section 3), the Lender determines that any of my representations herein are no longer true and correct or any covenant by me has not been performed, the Loan Documents will not be modified and this Modification Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
    B. I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Modification Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Modification Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 03/01/16 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 04/01/16.

    A. **Unpaid Principal Balance.** As of 03/01/16, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 51,657.79 consisting of the unpaid amounts loaned to Borrower, previously deferred amounts, if any, plus any interest and other amounts capitalized.

    B. **Waived or Forgiven Late Charges.** For and in consideration of the modification of the loan as described herein, Lender has agreed to waive or forgive accrued, unpaid late charges subject to the Borrower's compliance with the terms of this Modification Agreement. The total amount of accrued, unpaid late charges waived or forgiven is U.S. $ 0.00.

    C. **Deferred Principal Balance.** For and in consideration of the modification of the loan as described herein, Lender has agreed to defer a portion of the Unpaid Principal Balance in an amount equal to  $ 0.00 ("Deferred Principal Balance"). The Deferred Principal Balance, if any, is in addition to the Modified Principal Balance and shall continue to be due and owing by Borrower to Lender; provided, however, Lender agrees that for so long as Borrower

makes the principal and interest payments in a timely manner and ultimately pays the Deferred Principal Balance to the extent obligated under the terms of the Note or Security Instrument, which if not sooner demanded, shall be due and payable upon the earlier of any voluntary loan payoff or on the Maturity Date, when the final balloon payment will become due and payable. Prior to the earlier of any voluntary loan payoff or the Maturity Date, Lender will not seek to enforce its security interest under the terms of the Security Instrument solely for failure to pay the Deferred Principal Balance.

D. **Principal Reduction Alternative.** You qualify for a total Principal Reduction Alternative in the amount of $ 0.00. You may be eligible to have some of your principal forgiven on a deferred basis. If you make your monthly mortgage payments on time, we will forgive $ 0.00 of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years. You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this three year period, including all accrued and unapplied amounts, even if the mortgage loan is later brought current. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional. **YOU MAY HAVE TO REPORT THE MORTGAGE FORGIVENESS ON YOUR TAX RETURN AND PAY INCOME TAX ON THIS MORTGAGE FORGIVENESS AMOUNT. SEE SECTION 5. TAX. PLEASE CONSULT A TAX ADVISOR.**

E. **Modified Principal Balance.** Borrower acknowledges that the Modified Principal Balance payable under the Note and the Security Instrument shall be calculated as set forth below:

| | |
|---|---|
| i. Principal Balance | $ 45,014.70 |
| ii. Accrued unpaid Interest | $ 3,483.77 |
| iii. Accrued unpaid late charges | $ 0.00 |
| iv. Advances regarding delinquent real estate taxes or to pay insurance premiums | $ 3,159.32 |
| v. Appraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims | $ 0.00 |
| vi. Previously deferred amounts | $ 0.00 |
| Total (the "Unpaid Principal Balance" from Section 3(A)) | $ 51,657.79 |
| Less: | |
| Forgiven Late Charges from Section 3(B) | $ 0.00 |
| Deferred Principal Balance from Section 3(C) | $ 814.58 |
| Principal Reduction Alternative from Section 3(D) | $ 0.00 |
| Forgiven fees included in Section 3(E) | $ 0.00 |
| BORROWER CONTRIBUTION | $ 757.82 |
| Plus: | |
| Advances to establish initial escrow account, if any | $ 0.00 |
| Total (the "Modified Interest bearing Principal Balance") | $ 50,085.39 |

F. **Repayment Terms.** Borrower promises to pay the Modified Principal Balance, plus interest, to the order of Lender as set forth below:
1) The Maturity Date is 03/01/56. If on the Maturity Date Borrower still owes amounts under the Note and Security Instrument, as amended by this Modification Agreement, Borrower will pay these amounts in full on the Maturity Date.

2) The interest rate will begin to accrue as of 03/01/16 and the first new monthly payment on the Modified Principal Balance will be due on 04/01/16.

3) $ 814.58 of the Unpaid Principal Balance shall be deferred and will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the Deferred Principal Balance. In addition, $ 0.00 of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 12/01/15, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 50,085.39. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 03/01/16 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 04/01/16. My payment schedule for the modified Loan is as follows:

| Years | Int Rate | Int Rate Change Date | Monthly Principal and Int Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.0000% | 03/01/16 | $ 151.67 | $ 283.24 May adjust periodically | $ 434.91 May adjust periodically | 04/01/16 | 60 |
| 6 | 3.0000% | 03/01/21 | $ 176.21 | May adjust periodically | May adjust periodically | 04/01/21 | 12 |
| 7-TERM | 3.6250% | 03/01/22 | $ 192.18 | May adjust periodically | May adjust periodically | 04/01/22 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Any terms of the Note or Security Instrument which would result in any further interest rate reduction, including without limitation a Timely Payment Rewards program, or Smart Step program, are hereby deleted and will not be applicable to the Note as modified herein. Further, any terms of the Note or Security Instrument which provide for an adjustment of the interest rate are hereby deleted.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Modification Agreement and I pay my Note in full (i) any time more than 30 calendar days after the

Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance. Any deferred principal forgiveness may be reported to the Internal Revenue Service which may have tax consequences. Therefore, you are advised to seek guidance from a tax professional.

The deferred principal balance will be treated as a non-interest bearing principal forbearance. Borrowers will not pay interest or make monthly payments on the Deferred Principal Balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATIED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

4) I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Modification Agreement.

5) I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Modification Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the Lender has waived this requirement in writing.
B. That this Modification Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.
C. To comply, except to the extent that they are modified by this Modification Agreement, with all covenants, Agreements, and requirements of Loan Documents including my Agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.
D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Modification Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise

its rights under the Loan Documents and this Modification Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. ~~Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender~~ shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Modification Agreement are duly valid, binding Agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Modification Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Modification Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Modification Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Modification Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or

amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void. Borrower has the right to make payments of Principal at any time before they are due. A payment of principal only is known as a "Prepayment". When Borrower makes a Prepayment, Borrower will tell the Lender in writing that Borrower is doing so. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments due under the mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note") as herein modified.

If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the principal and interest payment or term unless Lender agrees in writing to those changes.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or Subordination Agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Modification Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination Agreement(s), then the terms of this Modification Agreement will not become effective on the Modification Effective Date and the Modification Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Modification Agreement if an error is detected after execution of this Modification Agreement. I understand that either a corrected Modification Agreement or a letter Agreement containing the correction will be provided to me for my signature. At Lender's option, this Modification Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Modification Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Modification Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M. That Borrower will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Modification Agreement; or (ii) correct the terms and conditions of this Modification Agreement if an error is detected after execution of this Modification Agreement. I understand that a corrected Modification Agreement or a letter Agreement containing the correction will be provided to me formy signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Modification Agreement, and I will not be eligible for a modification.

N. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the Modified Principal Balance.

O. I acknowledge that the Deferred Principal Balance set forth above may or may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless I acknowledge that such Deferred Principal Balance is due and payable as set forth above.

P  If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice

from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property by foreclosure or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights.

Q. Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Modification Agreement, I understand that I enter this Modification Agreement voluntarily and that this Agreement, or actions taken by the Lender in relation to this Modification Agreement, does not constitute a demand for payment or any attempt to collect any such obligation.

**5. Tax.** The amount of debt forgiven (your mortgage balance) is generally income to you in the year forgiven, unless you qualify for a tax exclusion. You will be responsible for paying any income taxes due on your mortgage balance forgiven.

Lender will report to you and the Internal Revenue Service the amount of your mortgage balance forgiven on Form 1099-C, as required by law. Form 1099-C will be mailed to you by January 31 of the year following the year of the mortgage balance forgiveness. Please consult your tax advisor if you have any questions.

[N/A] MERS LOAN. If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of 1901 E Voorhees Street Suite C, Danville, IL 61834 or PO Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

EXECUTED effective as of the day and year first above written.

ACCEPTED AND AGREED TO BY -

In Witness Whereof, the Lender and I have executed this Agreement

*[signature]*
CitiMortgage, Inc. successor by merger to CitiFinancial Mortgage Company, Inc.

Thomas K. James
Document Control Officer
CitiMortgage, Inc.
Title

4-18-16
Date

*[signature: Gloria E Mojica]*
GLORIA MOJICA

April 1, 2016
Date

---

Shawn Lee Roberts
Lender Witness 1 (Print)

*[signature]*
Lender Witness 1 (Sign)

4/18/2016
Lender Witness 1 (Date)

Geneva English
Lender Witness 2 (Print)

*[signature: Genglish]*
Lender Witness 2 (Sign)

4-18-16
Lender Witness 2 (Date)

*[signature: Wendi M Freeman]*
Borrower Witness 1 (Print)

Wendi M. Freeman
Borrower Witness 1 (Sign)

4/1/16
Borrower Witness 1 (Date)

Nichole Infinger
Borrower Witness 2 (Print)

*[signature: Nichole Infinger]*
Borrower Witness 2 (Sign)

4/1/16
Borrower Witness 2 (Date)

[Space Below This Line For Acknowledgments]

INDIVIDUAL ACKNOWLEDGEMENT

State of South Carolina

County of DORCHESTER

On this __1st__ day of __April__, in the year __2016__, before me, the undersigned, personally appeared, GLORIA MOJICA personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within Instrument and acknowledged to me that HE/SHE/THEY executed the same in HIS/HER/THEIR capacity(ies), and that by HIS/HER/THEIR signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted executed the instrument.

Notary Public __Nichole Infinger__

My Commission Expires: __March 18, 2023__



Legal description

## EXHIBIT "A"

All that certain piece, parcel or lot of land, situate, lying and being in the County of Dorchester, State of South Carolina and shown and designated as Lot 20, Block A, Hunter's Creek Subdivision, as shown and designated on a plat entitled "Hunter's Creek Subdivision, a 23.51 acre tract of land, property of Skye Development Company, located in Dorchester County, South Carolina" by Trico Surveying, Inc. and recorded in the RMC Office for Dorchester County on February 19, 1986, in Plat Cabinet E at slide 348. Said property having such buttings, boundings, metes and dimensions a will by reference to said plat more fully and at large appear.

Derivation: This being the same property conveyed unto Antonio Mojica and Gloria Mojica by Deed of Les Daces Enterprises, Inc. dated 6/22/94 and recorded 7/14/94 in Book 1350 at page 149. Said Antonio Mojica died on January 27, 1999. Deed of Distribution from the Estate of Antonio Mojica (Dorchester County Probate 99-ES-18-00060) dated December 3, 1999 to be recorded simultaneously herewith, vesting the interest of Antonio Mojica in the subject property in Gloria Mojica; Maritza Mojica; Antonio Mojica, Jr.; and David Mojica.

Maritza Mojica conveyed her interest in subject real estate to Gloria Mojica by Deed dated December 30, 1999 and to be recorded. herewith.

Antonio Mojica, Jr. conveyed his interest in subject real estate to Gloria Mojica by Deed dated December 3, 1999 to be recorded. herewith.

David Mojica conveyed his interest in subject real estate to Gloria Mojica by Deed dated December 3, 1999 to be recorded. herewith.

TMS Number: 129-11-14-020

Property Address: 231 Grapevine Road, Summerville, South Carolina 29483

This Agreement modifies an obligation secured by an existing security instrument recorded in Dorchester County, SC, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $ 54,000.00. The principal balance secured by the existing security instrument as a result of this Agreement is $ 50,085.39, which amount represents the excess of the unpaid principal balance of this original obligation

STATE OF **MISSOURI, ST. CHARLES COUNTY**

On <u>April 18, 2016</u> before me, the undersigned, a notary public in and for said state, personally appeared <u>Thomas K. James</u>, Document Control Officer of CitiMortgage, Inc., personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public / Geneva English

GENEVA ENGLISH
Notary Public - Notary **Seal**
State of Missouri
Commissioned for Lincoln County
My Commission Expires: March 13, 2020
Commission Number: 12314301